SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
spencer@spencersheehan.com


REESE LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com


JAMES CHUNG, ESQ.
Telephone: (718) 461-8808
Facsimile: (929) 381-1019
jchung_77@msn.com

United States District Court
Eastern District of New York                                   1:19-cv-06733-DLI-RER

| | |
|---|---|
| Andrew Kim, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | First Amended Complaint |
| Trulia, LLC, | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.  Trulia, LLC ("defendant") operates one of the nation's leading real estate website at Trulia.com, which purports to make the process of buying and selling a home easier and more transparent.

2. In today's economy, large swaths of commercial and social activity are dominated by "winner-take-all" online platforms in specific sectors.

3. Whether it is Google for search, Amazon for commerce, Facebook for social networking, Yelp for reviews, Uber for on-demand transportation or Trulia for home buying, "users often look to platforms to serve as filters" for the torrent of information the internet makes available.[1]

4. However, buying a home is several orders of magnitude more significant than spending $2.99 on toothpaste that arrives within two days or using an "app" to arrange a ride to the airport.

5. Buying a house or apartment is the most expensive purchase most Americans will ever make and is often their main retirement asset.

6. Defendant's website has 23 million unique monthly visitors, which gives defendant "the power to tilt the real-world playing field in favor of its own favored counterparties" – "Premier Agents" – who, unbeknownst to users, pay monthly fees to be associated with properties they have no connection to nor knowledge of.[2]

7. Defendant collects unlawful "blanket referral fees" disguised as advertising fees from Premier Agents and is thereby incentivized to re-direct inquires actually made to listing agents to its Premier Agents.[3]

8. These tactics enable defendant to deliver on the number of leads it promises Premier Agents each month so that they continue paying, and defendant's stock price keeps rising.

9. Defendant's practices are unfair towards traditional real estate brokers and listing

---

[1] John M. Newman, "Complex Antitrust Harm in Platform Markets," CPI Antitrust Chronicle, May 2017 at p.6.
[2] *Id*.
[3] Dmitry Shkipin, "Blanket Referral Agreements in Real Estate," US DOJ Filing, December 1, 2019

2

agents and deceptive to consumers causing confusion, economic harm and deception.

10.  Prospective homebuyers are stymied in attempting to contact a property's exclusive listing agents, who are sought out for their connection to the property and their local knowledge.

11.  The listing agent has the original connection with the seller and contracts to sell the house on the owner's behalf, which is why they describe such exclusive listings as "my" or "mine." The use of the phrase "exclusive listing" is appropriate since the listing agent exerts extraordinary amount of time, money and other resources to obtain listing from the seller.

12.  Defendant's term, "Premier Agent," connotes a special relationship to the property and superior knowledge of the property over other real estate agents, specifically, the listing agents.

13.  On defendant's website or mobile app, when a prospective homebuyer searches and arrives at a Trulia page listing a property, they are presented with a prominent, bright red bar stating "Request Info."



14.  After clicking, the user is prompted to provide their contact information which gets transmitted to three "Premier Agents."

"Request Info" Display



15. Moreover, when a prospective homebuyer lands on the page for a property, it requires several scrolls to identify the listing agent among the multiple premier agents.

16. Tapping one of the agents should dial the number for the appropriate agent.

17. However, where a prospective homebuyer chooses to contact a listing agent, their information is instead sent to defendant's employees who screen them by phone, text or email, prior to connecting them with a Premier Agent, shown through defendant's own materials.



18. Defendant's control over Premier Agents is further indicated by their selection from real estate brokers based on number of homes sold and the right of termination based on performance.

4

19. Defendant enables and promotes the Premier Agents to do indirectly what it cannot do directly – advertise to and solicit prospective homebuyers based on the listings supplied by other real estate brokers.

20. These factors are the hallmarks of an employer-employee relationship with the Premier Agents acting as real estate brokers or agents under defendant.

21. This is contrary to standard advertising practices where businesses have an arms-length relationship with the platform where they buy advertising.

22. The effects of defendant's concerted efforts with Premier Agents is to prevent and/or hinder prospective buyers from having access to the listing agents.

23. After successfully re-directing the prospective homebuyers, the Premier Agents are unable to provide the information requested because they have no connection to the property being advertised, other than having paid defendant to be presented prominently next it.

24. The inability to provide requested information is further exacerbated because only a few Premier Agents operate per zip code.

25. In contrast, tens or even hundreds of real estate agents operate per zip code in a traditional real estate brokerage that does not participate in the Premier Agent program.

26. In fact, a Premier Agent complains that "as I am often not familiar with the property the buyer is inquiring about, I am not able to help the buyer properly."[4]

27. The listing agent is best situated to answer prospective homebuyer's inquiries.

28. This "bait and switch" tactic draws the prospective buyer in with a property they desire only to show them a completely different property they had no desire to see.

29. Premier Agents are prone to steering prospective homebuyers towards properties that

---

[4] Consumeraffairs.com

are better financial arrangements for them as opposed to the homebuyers.

30. Premier Agents induce unwary homebuyers into signing Buyer's Agent Agreements or Dual Agency Agreement to maximize their commission.

31. In a standard home purchase/sale, the buyer and seller are represented by individual real estate agents who equally split a commission, i.e., 6%.

32. However, a Buyer Broker Agreement allows an agent to collect a commission from the buyer and the seller.

33. A Dual Agency transaction with the agent "representing" the buyer and seller lets an agent keep the entire commission, but careful disclosures and consent are required.

34. This opportunity to engage in "buyer broker and dual agency" is one of the main selling points to participating agents and brokers.

35. Studies have shown that participating Premier Agents have more, and a higher percent of, buyer broker and dual agency transactions compared to non-participating agents.

36. Specifically, a report from Morgan Stanley "found that 60 % of those real-estate agents who advertised as a "premier agent" on Zillow, defendant's parent company, received a 30 % increase in these dual-side deals."[5] *See* Morgan Stanley Research, "Making Both Sides Count; Reiterate OW," September 10, 2015.

37. A strict statistical calculation indicates at least an 18 % increase in dual agency among Premier Agents.

38. From the first time a prospective homebuyer engages with defendant's site, neither the participating agents nor defendant explain to prospective homebuyers that participating agents are representing interests adverse to them.

---

[5] Amy Hoak, "Something You Should Know About Real Estate Agents On Zillow," Market Watch, Septenber 2015.

39. Counsel's pre-suit investigation revealed and confirmed that Premier Agents seek to take advantage of prospective homebuyers through being their buyer's agents.

40. When Premier Agents are questioned by a prospective homebuyer whether they would be harmed by this practice, they fail to respond in a way that provides clarity and transparency.

41. In these situations, the Premier Agent only represents the buyer, who would be required to pay the commission to the Premier Agent.

42. The Premier Agents realize this arrangement would be detrimental to buyers, and refuse to expound further via written communication, requesting that the prospective purchase discuss it over the phone.

43. The Premier Agent advertising practices violate real estate industry regulations which prohibit advertisement of another broker's exclusive listing without clarity and transparency.  *See* 19 NYCRR § 175.25(b).

44. The Premier Agent advertisements give prospective homebuyers the impression that the Premier Agents have "a listing in this property or properties or that any property is currently available." *See* 19 NYCRR § 175.25(d)(6) ("Any advertisement that references or includes information about a property that is not listed with the advertising broker or was not sold by the advertising broker shall prominently display" a disclaimer informing the public that no such property is actually available).

45. The purpose of this is to prevent prospective buyers from falling into the clutches of real estate agents who (1) have no interest in showing or selling the property they viewed, (2) no relation to or knowledge about the listing for which they submitted the initial inquiry, (3) are dishonest and may perpetrate or aid in the perpetration of frauds in the brokerage and sale of real

7

estate and (4) are inexperienced and inept.

46. As a result of defendant's conduct, plaintiff has lost and continues to lose valuable leads which would have turned into earned commissions, a monetary loss which will continue until defendant's challenged conduct ceases.

47. Plaintiff would not have suffered monetary losses, nor continue to suffer loss, without defendant's actions or omissions.

48. Defendant's actions and omissions prevent business from naturally flowing to listing agents.

## Jurisdiction and Venue

49. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

50. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

51. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

52. Plaintiff Andrew Kim is a citizen of New York.

53. Defendant Trulia LLC. is a Delaware limited liability company with a principal place of business in San Francisco, San Francisco County, California and is a citizen of California.

54. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

55. Venue is proper because plaintiff and many class members reside in this District and

8

defendant does business in this District and State.

56. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

57. Plaintiff Andrew Kim is a citizen of Queens County, New York and is a New York licensed real estate salesperson and/or real estate broker.

58. Defendant is a Delaware corporation with a principal place of business in San Francisco, California, San Francisco County and is a citizen of California.

59. Premier Agent Program participants are possible party-defendants who have not been joined to the instant action, as co-conspirators in the marketing described herein.

60. Premier Agent participants may be added upon further discovery.

61. Defendant is jointly and severally liable for the acts of its co-conspirators whether or not they are named as defendants.

## Class Allegations

62. The class will consist of all real estate brokers, real estate sales agents and other similarly designated real estate personnel in New York.

63. Common questions of law or fact predominate and include whether defendant's representations and practices were likely to harm plaintiff, the general public and if plaintiff and class members are entitled to damages.

64. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive actions.

65. Plaintiff is an adequate representative because his interests do not conflict with other members.

66. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

67. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

68. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

69. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York GBL § 340
("Donnelly Act")

70. Plaintiff incorporates by reference all preceding paragraphs.

71. The Donnelly Act declares illegal and void every contract agreement, arrangement or combination whereby competition or the free exercise of any activity in the conduct of any business trade or commerce or in the furnishing of any service in this state is or may be restrained.

72. Defendant has harmed competition because there has been an adverse effect on prices and quality of service in the New York State real estate market.

73. The Premier Agents provide diminished services to homebuyers by not being able to supply the relevant and requested local information to prospective homebuyers.

74. The Premier Agents cause an increase in prices paid by homebuyers who are steered into dual agency or buyer broker agency agreements, resulting in more money paid to them.

75. These harms are reflective of the anti-competitive effects of defendant's actions.

76. The relevant market for real estate broker services is the state of New York.

77. Defendant's business practice causes consumer confusion and frustration, and immediately harms the listing agents who are not adequately disclosed in connection with the potential sale of a property.

78. Prospective homebuyers are induced by defendant's employees to enter into Buyer's Agent agreements or dual agency transactions which typically include higher fees for the agent, compromised representation for the prospective buyer and result in less money spent on purchasing a home.

79. Prospective homebuyers are hindered from viewing the properties they initially intended to, due to the skewed incentives of the relationship between defendant and Premier Agents.

80. The Premier Agents, in turn, supply defendant with the monthly advertising revenues needed to consolidate control in the real estate industry, to the detriment of licensed real estate brokers, agents and those operating for them in the market for home buying.

New York GBL §§ 349 & 350
(Consumer Protection from Deceptive Acts)

81. Plaintiff incorporate by reference all preceding paragraphs.

82. Plaintiff have been injured and suffered damages by defendant's violations of New York GBL § 349, which makes unlawful "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York."

83. Plaintiff have been injured and suffered damages by defendant's violation of New York GBL § 350, which prohibits "false advertising in the conduct of any business, trade, or commerce in the furnishing of any service in New York," and New York GBL § 350-a, which provides that false advertising "means advertising, including labeling, of a commodity...if such advertising is misleading in a material respect.

84. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound, or any combination thereof, but also the extent to which the advertising fails to reveal facts

11

material in light of such representation with respect to the commodity...to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

85. In its sale of goods and services throughout the State of New York, defendant conducts business and trade within the meaning and intendment of New York GBL §§ 349 & 350.

86. Defendant has engaged in consumer-oriented acts and practices, including providing services in connection to sale of houses, which are durable consumer goods, in New York, that are false, deceptive and misleading in a material way.

87. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public at large, as they are conducted and disseminated to the public via defendant's website, advertising on promotions, and other public statements in the public domain and press aimed at consumers and homebuyers.

88. Defendant's actions are harmful to prospective homebuyers by referring them to agents whose only connection to a desired property is that they paid the most money in a particular geographic area to defendant and lack knowledge of the listing and surrounding area.

89. Defendant's actions cause consumer confusion and financial harm, by inducing or attempting to induce them to sign Buyer's Broker Agreements or Duel Agent Agreements.

90. Defendant's actions are the direct, and proximate cause of the harm to plaintiff and consumers.

91. Defendant's actions have a detrimental effect on licensed real estate brokers, real estate agents and those working for them since defendant's business model is based on Premier Agents paying to be listed on properties which they are not the listing agents and obscuring the identities and contact information for the listing agents.

92. Plaintiff is a competitor of defendant and the Premier Agents and plaintiff has been damaged by defendant's violations of New York GBL §§ 349 & 350.

93. As a direct result of defendant's violations, plaintiff and consumers have suffered damages.

94. Pursuant to New York GBL § 349(h), plaintiff is entitled to an injunction enjoining defendant's wrongful deceptive acts and practices; actual damages or fifty dollars, whichever is greater, for each violation; three times actual damages as a result of defendant's will and wrongful violations; and an award of reasonable attorneys' fees and costs.

95. Pursuant to GBL § 350(e), plaintiff is entitled to an injunction enjoining defendant's wrongful acts and practices and false advertising; actual damages or five hundred dollars, whichever is greater, for each violation; three times actual damages as a result of defendant's willful and wrongful violations; and reasonable attorneys' fees and costs.

## Unfair Competition

96. Plaintiff incorporates by reference all preceding paragraphs.

97. Defendant misappropriated the labors and expenditures of plaintiff by failing to adequately disclose they were the listing agents.

98. This caused harm to the listing agents by diverting leads and lost sales.

99. Defendant's bad faith is evident by its efforts at promoting the "Premier Agent" program at the expense of listing agents and to the detriment of prospective homebuyers, in knowing violation of law and in opposition to the interest of prospective homebuyers.

## Unjust Enrichment

100. Plaintiff incorporates by reference all preceding paragraphs.

101. Defendant has been unjustly enriched as a result of the conduct described in this Complaint and other inequitable conduct.

102. It would be unconscionable and against the fundamental principles of justice, equity, and good conscience for defendant to retain substantial monetary benefits they have received as a result of their misconduct.

103. The monetary benefits were not legitimately earned and came at the expense of plaintiff.

104. Defendant is guilty of willful and conscious disregard for the rights of plaintiff.

105. To remedy defendant's unjust enrichment, the Court should order defendant to disgorge any money received by defendant as a result of their misconduct alleged herein.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the class pursuant to the applicable laws of their States;
4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: March 17, 2020

                                                           Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

James Chung, Esq.
Telephone: (718) 461-8808
Facsimile: (929) 381-1019
*jchung_77@msn.com*

1:19-cv-06733-DLI-RER
United States District Court
Eastern District of New York

Andrew Kim, individually and on behalf of all others similarly situated,

                                     Plaintiff,

- against -

Trulia, LLC,

                                     Defendant

## First Amended Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: March 17, 2020

                                                                         /s/ Spencer Sheehan
                                                                          Spencer Sheehan