**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ANDREW KIM, individually and on behalf of all others similarly situated, | : : : : | CIVIL ACTION<br><br>Case No.: 1:19-cv-06733 |
| Plaintiffs, | : : | ECF Case |
| v. | : : | |
| Trulia, LLC, | : : | |
| Defendant. | : : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TRULIA, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

**SAUL EWING ARNSTEIN & LEHR LLP**
Francis X. Riley III, Esq.
Ryan L. DiClemente, Esq.
650 College Road East, Suite 4000
Princeton, New Jersey 08540
(609) 452-3100

*Attorneys for Defendant Trulia, LLC*

Dated: April 10, 2020

## TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………………..1

RELEVANT FACTS AND PROCEDURAL HISTORY ....................................................... 3

ARGUMENT .......................................................................................................................... 5

I.     PLAINTIFF LACKS STANDING TO ASSERT HIS CLAIMS AGAINST TRULIA ...............................................................................5

     A.    Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) ................................................................................................5

     B.    Plaintiff Fails to Sufficiently Allege Article III Standing ......................5

II.    PLAINTIFF FAILS TO ADEQUATELY PLEAD HIS CLAIMS ....................9

     A.    Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ................................................................................................9

     B.    Plaintiff's Claims Under GBL § 349 and § 350 Fail as a Matter of Law ..........................................................................................9

          i.    Plaintiff Has Not Identified Any Purported Misrepresentation or False Advertisement, Nor Has He Alleged that He Viewed Any Such Misrepresentation or False Advertisement Prior to Engaging in Any Particular Transaction.................................. 11

          ii.    Plaintiff's Claims Do Not Involve "Consumer-Oriented" Conduct ......................................................................... 13

          iii.    Plaintiff's Claims Cannot be Saved with General Allegations of Indirect Harm to Potential Homebuyers ................................... 13

     C.    Plaintiff Fails to Allege the Necessary Elements of a Donnelly Act Claim ................................................................................14

          i.    Plaintiff Fails to Sufficiently Allege that Trulia is in Competition with His Business ................................................ 16

          ii.    Plaintiff Has Not and Cannot Plead a Reciprocal Relationship Designed to Achieve an Unlawful Objective between the Premier Agents and Trulia ....................................... 17

          iii.    Plaintiff's Amended Complaint Fails to Sufficiently Identify the Market at Issue or Allege Trulia's Actions have an Adverse Effect on Competition.................................................. 19

i

**D.**     **Plaintiff's Unfair Competition Claim Fails to State a Valid Claim for Relief** ............................................................**21**

**E.**     **Plaintiff's Unjust Enrichment Claim Must Be Dismissed**....................**23**

       **i.**     **Plaintiff Fails to Allege that Trulia Received Money or Benefits At His Expense** ........................................................................ **23**

       **ii.**    **Plaintiff's Unjust Enrichment Claim is Duplicative** ................ **24**

**F.**     **Plaintiff's Injunctive Relief Claim Should Be Dismissed** ....................**24**

**CONCLUSION** ............................................................................................................. **25**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agency Dev., Inc. v. Med Am. Ins. Co.*,
   310 F. Supp. 2d 538 (W.D.N.Y. 2004) ...................................................................20

*Alternative Electrodes, LLC v. Empi, Inc.*,
   597 F. Supp. 2d 322 (E.D.N.Y. 2009) ...................................................................20

*Arista Records LLC v. Lime Grp. LLC*,
   532 F. Supp. 2d 556 (S.D.N.Y. 2007)....................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................9

*Baker v. Carr*,
   369 U.S. 186 (1962)..................................................................................................6

*Barbagallo v. Marcum LLP*,
   820 F. Supp. 2d 429 (E.D.N.Y. 2011) ...................................................................21

*Barouh Eaton Allen Corp. v. Cillco, Inc.*,
   No. 06-CV-1820 (DLI) (KAM), 2008 WL 465493 (E.D.N.Y. Feb. 15, 2008)
   (J., Irizarry) ...........................................................................................................23

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003)....................................................................................9

*Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc.*,
   34 A.D.3d 91 (2d Dep't 2006) ........................................................................19, 21

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
   3 N.Y.3d 200 (N.Y. 2004) .....................................................................................14

*Caithness Long Island II, LLC v. PSEG Long Island LLC*,
   2019 WL 6043940 (E.D.N.Y. Sept. 30, 2019) .....................................................18

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
   11 F. Supp. 3d 317 (E.D.N.Y. 2014) .....................................................................22

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016)........................................................................................5

*City of New York v. Smokes-Spirits.Com, Inc.*,
   12 N.Y.3d 616 (N.Y. 2009) .............................................................................10, 14

*Corsello v. Verizon New York, Inc.*,
  18 N.Y.3d 777 (N.Y. 2012) ...........................................................................24

*Daniel v. Mondelez Int'l, Inc*.,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) ..........................................................10, 11

*Gale v. Int'l Bus. Machines Corp*.,
  9 A.D.3d 446 (2nd Dep't 2004) ....................................................................12

*Glob. Reinsurance Corp. U.S. Branch v. Equitas Ltd.*,
  18 N.Y.3d 722 (N.Y. 2012) ...........................................................................15

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014)................................................................10

*Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*,
  273 F.3d 509 (2d Cir. 2001)..........................................................................23

*Great Atl. & Pac. Tea Co. v. Town of E. Hampton*,
  997 F. Supp. 340 (E.D.N.Y. 1998) ...............................................................17, 18

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
  148 F. Supp. 3d 285 (S.D.N.Y. 2015)............................................................24

*Light Corrugated Box Corp. v. S. Kraft Corp*.,
  20 N.Y.S.2d 66 (N.Y. Sup. Ct. New York Cty. 1940) ....................................14, 16

*LoPresti v. Massachusetts Mut. Life Ins. Co.*,
  30 A.D.3d 474 (2d Dep't 2006) ....................................................................16, 22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).....................................................................................6

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000)..........................................................................5

*Matthews v. Mem'l Sloan-Kettering Cancer Ctr.*,
  No. 83 CIV. 6065 (SWK), 1985 WL 151 (S.D.N.Y. Mar. 19, 1985)...................25

*Naples v. Stefanelli*,
  972 F. Supp. 2d 373 (E.D.N.Y. 2013) ...........................................................19

*Naples v. Stefanelli*,
  No. 12-CV-4460 (JS) (ARL), 2015 WL 541489 (E.D.N.Y. Feb. 7, 2015) ..........15, 16, 17, 21

*In re Nassau Cty. Consol. MTBE (Methyl Tertiary Butyl Ether) Prod. Liab. Litig.*,
  29 Misc. 3d 1219(A), 2010 WL 4400075 (N.Y. Sup. Ct. Nassau Cty. Nov. 4,
  2010) ..........................................................................................................10

iv

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys.*,
 LLC, 861 F. Supp. 2d 344 (S.D.N.Y. 2012) ...................................................15, 17

*Nelson v. MillerCoors, LLC*,
 246 F. Supp. 3d 666 (E.D.N.Y. 2017) ...................................................................24

*Neri's Land Improvement, LLC v. J.J. Cassone Bakery, Inc.*,
 65 A.D.3d 1312 (2nd Dep't 2009) .........................................................................16

*Oden v. Boston Scientific Corp.*,
 330 F. Supp. 3d 877 (E.D.N.Y. 2018) ....................................................10, 11, 12

*Parker Madison Partners v. Airbnb, Inc.*,
 283 F. Supp. 3d 174 (S.D.N.Y. 2017) ................................................................7, 8

*Petrello v. White*,
 533 F.3d 110 (2d Cir. 2008) ..................................................................................25

*Raines v. Byrd*,
 521 U.S. 811 (1997) .................................................................................................6

*Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*,
 812 F. Supp. 387 (S.D.N.Y. 1993) ........................................................................19

*Rochester Drug Co-op., Inc. v. Biogen Idec U.S.*,
 130 F. Supp. 3d 764 (W.D.N.Y. 2015) ..................................................................16

*Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*,
 672 F.2d 1095 (2d Cir. 1982) ..........................................................................21, 22

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
 241 F.3d 232 (2d Cir. 2001) ..................................................................................25

*Sands v. Ticketmaster-New York, Inc.*,
 207 A.D.2d 687 (1st Dep't 1994) ..........................................................................16

*Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*,
 710 F.2d 87 (2d Cir. 1983) ..............................................................................15, 17

*Scotti v. United States*,
 2018 WL 3122058 (E.D.N.Y. Apr. 24, 2018) .........................................................9

*Shipping Fin. Servs. Corp. v. Drakos*,
 140 F.3d 129 (2d Cir. 1998) ....................................................................................5

*Sitt v. Nature's Bounty, Inc.*,
 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ......................................................24

*Solomon v. Bell Atl. Corp.*,
    9 A.D.3d 49 (1st Dep't 2004) ...................................................................12

*Spirit Locker, Inc. v. EVO Direct, LLC*,
    696 F. Supp. 2d 296 (E.D.N.Y. 2010) ....................................................13

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540 (2016) ...............................................................................6

*Treiber v. Aspen Dental Mgmt., Inc.*,
    635 F. App'x 1 (2d Cir. 2016) ...................................................................6

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001)......................................................................20

*Whalen v. Pfizer, Inc.*,
    9 Misc. 3d 1124(A), 2005 WL 2875291 (N.Y. Sup. Ct. New York Cty. Sept.
    22, 2005) ....................................................................................................12

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)....................................................................................6

*Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*,
    736 F. Supp. 2d 661 (W.D.N.Y. 2010) ...............................................18, 21

*Yankees Entm't & Sports Network, LLC v. Cablevision Sys. Corp.*,
    224 F. Supp. 2d 657 (S.D.N.Y. 2002)......................................................15

**Statutes**

N.Y. Gen. Bus. Law § 340 .................................................................................2, 4

N.Y. Gen. Bus. Law § 349.................................................................. 2, 4, 7, 9-14, 24

N.Y. Gen. Bus. Law § 350.................................................................. 2, 4, 9-14, 24

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)...................................................................................5, 6

Fed. R. Civ. P. 12(b)(6)...................................................................................9, 19

## PRELIMINARY STATEMENT

Plaintiff Andrew Kim's ("Plaintiff") Amended Complaint is fundamentally flawed, warranting the dismissal of his claims against Defendant Trulia, LLC ("Trulia").  Trulia operates a free real estate website that connects home buyers, sellers, real estate agents, and other residential settlement service providers by, among other things, identifying properties listed for sale on various local multiple listing systems.  Plaintiff's claims are based on the contention that Trulia identifies and includes "Premier Agents" in listings for various properties on its website.  Specifically, Plaintiff alleges that these Premier Agents appear on the same webpages as property listings with which they may not be connected.  Further, Plaintiff claims that it takes "several scrolls" down the webpage to identify the listing agent for the subject property.  Plaintiff also alleges that Trulia directs inquiries received through its website to Premier Agents, instead of sending them to the listing agent for the subject property.  Plaintiff then speculates that these Premier Agents, who are independent real estate agents unaffiliated with Trulia, are unable to provide the prospective homeowners with additional information about the property.  Instead, Plaintiff theorizes that Premier Agents steer the prospective homeowners towards properties other than the subject listings in an attempt to increase their own commissions.  Plaintiff alleges he was harmed by the loss of "valuable leads which would have turned into [actual] earned commissions."

Plaintiff's allegations of unidentified, unspecified, and unaccountable "lost leads" are entirely insufficient to confer standing under Article III of the United States Constitution.  Courts routinely dismiss claims, like Plaintiff's, which are based on purely "conjectural or hypothetical" harms.

Plaintiff's individual causes of actions are similarly flawed. Plaintiff's deceptive practices and false advertising claims, under New York GBL ("GBL") § 349 and § 350, fail to state a valid claim for relief. Specifically, Plaintiff has not alleged, and cannot allege, that: (i) he viewed any of the alleged misleading information on Trulia's website; (ii) his alleged harm arises from a "consumer-oriented" situation; or (iii) he has even suffered an actual injury that is traceable to Trulia's actions.

Plaintiff's Donnelly Act claim, pursuant to GBL § 340, must likewise be dismissed. In order to adequately state a claim for relief under the Donnelly Act, the defendant must be in competition with the plaintiff or with its conspirators. Here, Plaintiff, an alleged "real estate salesperson and/or real estate broker," has not and cannot allege, that Trulia, an operator of a real estate website, is in competition with him. Similarly, Plaintiff's Amended Complaint is devoid of any factual allegations that suggest the existence of a conspiracy or "reciprocal relationship" between the Premier Agents and Trulia, another prerequisite for pursuing a Donnelly Act claim. At best, Plaintiff has alleged nothing more than a traditional advertising transaction between Trulia and the Premier Agents that allows Premier Agents to appear on Trulia's website and obtain referrals from consumer inquiries submitted through the website. Even if these conclusory and unspecified allegations are accepted, they do not adequately state a valid claim for relief under the Donnelly Act.

Finally, Plaintiff's remaining claims for common law unfair competition, unjust enrichment, and injunctive relief are similarly flawed and no amount of pleading or repleading can save these claims from dismissal. For these reasons, and those set forth below, Plaintiff's Amended Complaint must be dismissed.

## RELEVANT FACTS AND PROCEDURAL HISTORY[1]

Plaintiff claims that Trulia is the operator of one of the "leading real estate website[s]" in the United States.  (Am. Compl., ¶ 1).  Trulia's free website assists homeowners in the process of buying and selling homes by providing resources for, among other things, the identification of real estate agents, mortgage lenders, and other real estate related professionals in a particular location.  (See Am. Compl., ¶¶ 1, 13-18).

By way of background, the "listing agent" for a particular property is described by Plaintiff as having "the original connection with the seller and contracts to sell the house on the owner's behalf."  (Am. Compl., ¶ 11).  Premier Agents are alleged to "pay monthly fees" to appear on Trulia's website next to properties that are listed for sale and for which the Premier Agents purportedly "have no connection to nor knowledge of."  (Am. Compl., ¶ 6).

Plaintiff's Amended Complaint is based on Trulia's alleged inclusion and identification of Premier Agents in listings for various properties on its website.  (See Am. Compl., ¶¶ 6-7, 23). Plaintiff, a "licensed real estate salesperson and/or real estate broker," alleges that Trulia's website is designed in a way to direct inquiries and requests for information to Premier Agents. (Am. Compl., ¶¶ 7-18, 57).   In addition, the term "Premier Agent" supposedly "connotes a special relationship to the property and superior knowledge of the property over . . . the listing agents."  (Am. Compl., ¶ 12).  Plaintiff further alleges that it takes "several scrolls to [even] identify the listing agent among the . . . [P]remier [A]gents" for property listings appearing on Trulia's website.  (Am. Compl., ¶ 15).  Plaintiff speculates that Premier Agents: (i) "are unable to provide the information requested" by potential buyers for a particular listing "because they

---

[1]   The factual allegations set forth herein are taken from the Amended Complaint and are set forth only for the purpose of this Motion to Dismiss and are not admitted by Trulia.

have no connection to the property"; (ii) "are prone to steering prospective homebuyers towards properties that are better financial arrangements for them"; and (iii) "induce unwary homebuyers into signing Buyer's Agent Agreements or Dual Agency Agreement[s] to maximize their commission." (Am. Compl., ¶¶ 23-30).

Plaintiff claims that as a result of Trulia's "actions and omissions," he lost "valuable leads which would have turned into earned commissions[.]" (Am. Compl., ¶¶ 46-48). Yet, Plaintiff's Amended Complaint fails to identify or provide any detail whatsoever regarding these purported "lost leads." Notwithstanding, Plaintiff asserts these claims on behalf of a putative class "of all real estate brokers, real estate sales agents[,] and other similarly designated real estate personnel in New York." (Am. Compl., ¶ 62).

Plaintiff's Amended Complaint asserts claims for:

- Violations of New York GBL § 340 ("Donnelly Act") (Count I);

- Violations of New York GBL §349 and §350 (Count II);

- Unfair Competition (Count III); and

- Unjust Enrichment (Count IV).

(Am. Compl., ¶¶ 70-105).

Plaintiff further demands monetary relief, including treble and punitive damages, attorneys' fees and costs, and "injunctive relief . . . to correct the challenged practices to comply with the law." (Am. Compl., at 14). Plaintiff's Amended Complaint, like his original Complaint, utterly fails to state a valid claim for relief against Trulia and must be dismissed as a matter of law.

## ARGUMENT

**I.     PLAINTIFF LACKS STANDING TO ASSERT HIS CLAIMS AGAINST TRULIA**

### A.     Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction where the "court lacks the statutory or constitutional power to adjudicate" the dispute. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (*citing* Fed. R. Civ. P. 12(b)(1)).  The plaintiff bears the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence.  *Id.* (citation omitted).  Further, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (*citing Norton v. Larney*, 266 U.S. 511, 515 (1925)).  Where a party lacks standing to pursue his or her claims, the court lacks subject matter jurisdiction to adjudicate the dispute and the matter must be dismissed.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) (citations omitted).

For the reasons set forth below, Plaintiff's inability to sufficiently establish the requisite standing to pursue his claims against Trulia is fatal to his Amended Complaint.

### B.     Plaintiff Fails to Sufficiently Allege Article III Standing

Plaintiff's claims against Trulia are based entirely on his bare and conclusory allegations that he "lost . . . valuable leads" which, Plaintiff speculates, "would have turned into earned commissions," had it not been for Trulia's "actions and omissions."  (Am. Compl., ¶¶ 46-48). These allegations are devoid of any supporting facts and instead, are premised on Plaintiff's pure conjecture and speculation.  Such allegations are insufficient to establish Article III standing and Plaintiff's claims should therefore be dismissed as a matter of law.

Pursuant to Article III of the Constitution, a federal court may only adjudicate an action if it constitutes a justiciable "case" or a "controversy." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The essence of the standing inquiry is to determine whether the party seeking to invoke the Court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends[.]" *Baker v. Carr*, 369 U.S. 186, 204 (1962).  Three elements form this essential inquiry and require an affirmative showing by Plaintiff: (1) "an injury in fact" to "a legally protected interest" that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).  A concrete injury has been described as one "that is distinct and palpable, as opposed to merely abstract[.]" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citations and internal quotation marks omitted).

At this juncture, "plaintiff must clearly allege facts demonstrating" the three elements of standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citation and internal quotation marks omitted).  Courts consistently dismiss complaints containing only conclusory allegations regarding the plaintiff's alleged injury in fact. *See, e.g.*, *Treiber v. Aspen Dental Mgmt., Inc.*, 635 F. App'x 1, 3-4 (2d Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (affirming the dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(1) because plaintiffs' claim of price gouging was "wholly conclusory and unsupported by any facts[.]").

Here, the Amended Complaint is devoid of any factual allegations relating to Plaintiff's alleged harm or injury.   Instead, the Amended Complaint is based on the unspecified,

unidentifiable, and unaccountable contention that Plaintiff "lost . . . valuable leads," along with even further speculation that these leads (*i.e.*, potential homebuyers with some level of interest in viewing a property) "would have turned into earned commissions[.]"   (Am. Compl., ¶ 46). Plaintiff's general allegations of "harm" are precisely the type of "hypothetical" and "speculative" injuries that are insufficient to establish Article III standing.

In *Parker Madison Partners v. Airbnb, Inc.*, the plaintiff brought a putative class action on behalf of itself as well as a class of licensed real estate brokers to challenge the defendant's alleged violation of GBL § 349. *Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 176 (S.D.N.Y. 2017).   Plaintiff alleged that the defendant, Airbnb, Inc., provided real estate brokerage services without the required licenses and as a result, "licensed brokers [were] harmed by a massive scale market competitor" and Plaintiff's business interests were harmed, along with "the integrity of the licensed real estate broker industry." *Id.* at 180.   Plaintiff also alleged that it had "an interest both in protecting [its] business interests and customer base, and in not being subject to competition in a commercial arena reserved exclusively for licensed brokers and in maintaining the integrity of the licensed real estate broker profession[.]" *Id.*   The Court held that Plaintiff's conclusory assertions were insufficient to demonstrate the requisite injury in fact and noted that Plaintiff's generalized claims of "damage to their business, threats to their industry and the professional standards of that industry, and substantial lost revenues—not directly tied to injury suffered by Plaintiff—do not establish any cognizable injury as they do not include a single example or give any details whatsoever as to any actual injury to Plaintiff connected to [defendant's] activities." *Id.* at 180-81.   The Court also found the complaint lacked any allegations regarding "any current or potential clients that have been lost to [defendant], nor [were] there even claims stating that Plaintiff operates in the same market as [defendant], let

alone any allegations revealing how Plaintiff competes with [defendant]." *Id.* at 181.  The same result should follow here.  Just like the plaintiff in *Airbnb*, Plaintiff does not include a single example, or give any detail, as to the actual injury he suffered in connection to any of Trulia's activities.  Further, the Amended Complaint lacks any allegations regarding any purported current or potential clients that Plaintiff lost to a Premier Agent, or more specifically, were lost as a result of Trulia's actions.

Seemingly aware of this fatal deficiency, Plaintiff's Amended Complaint attempts to identify some generalized "harm" to consumers—not the real estate salespersons or brokers he seeks to represent in this putative class action.  The Amended Complaint surmises, with no supporting allegations, that Premier Agents do not and could not provide any information for a particular property beyond that which is provided within the advertisement/listing itself.  (Am. Compl., ¶ 23-27).  Plaintiff further theorizes that Premier Agents then steer consumers to properties other than the subject listing and attempt to "induce unwary homebuyers into signing Buyer's Agent Agreements or Dual Agency Agreement[s] to maximize their commission."[2] (Am. Compl., ¶¶ 29-30)  First, Plaintiff does not allege why Premier Agents, who are licensed real estate agents, cannot obtain any additional information on the property by simply contacting the listing agent and asking for it.  Second, Plaintiff does not and cannot plead that the purported actions of the Premier Agents were taken on behalf of Trulia, or that Trulia benefited from the

---

[2] Plaintiff's claims that Premier Agents' alleged conduct is an attempt to have homebuyers enter into a purported injurious Buyer's Agency or Dual Agency Agreement is disingenuous at best because this is precisely the type of agreement and relationship that Plaintiff claims he is being wrongfully denied.  Thus, Plaintiff cannot in good faith claim that such relationship is harmful to consumers or prospective homebuyers.

Premier Agents' alleged inducements or steering in any way.[3]   Finally, it is axiomatic that Plaintiff must establish his standing to sue based on harm to him, not to a class of persons (*i.e.*, consumers) he is not even seeking to represent.   *See Scotti v. United States*, 2018 WL 3122058, at *2 (E.D.N.Y. Apr. 24, 2018); *see also Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).

Thus, Plaintiff's Amended Complaint fails to sufficiently allege any facts that would establish the requisite standing to maintain this action against Trulia.   The Amended Complaint must therefore be dismissed as a matter of law.

## II.   PLAINTIFF FAILS TO ADEQUATELY PLEAD HIS CLAIMS

### A.   Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

For the reasons set forth below, Plaintiff fails as a matter of law to satisfy the requirements for stating any of his individual claims for relief.

### B.   Plaintiff's Claims Under GBL § 349 and § 350 Fail as a Matter of Law

Plaintiff's Amended Complaint fails to sufficiently plead the basic elements of either a GBL § 349 or § 350 claim.   GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of

---

[3] Plaintiff is not bringing this action on behalf of "consumers" or potential purchasers of real estate.   Instead, he is a "licensed real estate salesperson and/or real estate broker" seeking alleged

any business, trade or commerce or in the furnishing of any service in this state[.]"  N.Y. Gen.

Bus. Law § 349(a).  GBL § 350 prohibits "[f]alse advertising in the conduct of any business,

trade or commerce or in the furnishing of any service in this state[.]"  N.Y. Gen. Bus. Law § 350.

To assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1)

consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered

injury as a result of the allegedly deceptive act or practice."  *Daniel v. Mondelez Int'l, Inc*., 287

F. Supp. 3d 177, 186 (E.D.N.Y. 2018) (*quoting Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d

Cir. 2015)).  "To properly allege causation [for GBL § 349 and § 350 claims], a plaintiff must

state in his complaint that he has seen the misleading statements of which he complains before he

came into possession of the products he purchased."  *See Goldemberg v. Johnson & Johnson*

*Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014); *see also Oden v. Boston*

*Scientific Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018).  A plaintiff does not and cannot

state a claim under GBL § 349 or § 350 "for purely indirect or derivative losses that were the

result of third-parties being allegedly misled or deceived."  *See In re Nassau Cty. Consol. MTBE*

*(Methyl Tertiary Butyl Ether) Prod. Liab. Litig*., 29 Misc. 3d 1219(A), 2010 WL 4400075 (N.Y.

Sup. Ct. Nassau Cty. Nov. 4, 2010); *see also City of New York v. Smokes-Spirits.Com, Inc.*, 12

N.Y.3d 616, 623 (N.Y. 2009) (noting the insufficiency of "allegations of indirect or derivative

injuries[.]").  Plaintiff cannot make the required showing to support his GBL § 349 and § 350

claims, and accordingly, they must be dismissed as a matter of law.

---

business damages for "lost . . . leads[.]"  (Am. Compl., ¶¶ 46, 57).  Plaintiff seeks to bring this
action on behalf of similarly situated persons.  (Am. Compl., ¶ 62).

    **i.**     **Plaintiff Has Not Identified Any Purported Misrepresentation or False Advertisement, Nor Has He Alleged that He Viewed Any Such Misrepresentation or False Advertisement Prior to Engaging in Any Particular Transaction**

In order to state a viable GBL § 349 or § 350 claim, a plaintiff must sufficiently identify the alleged misrepresentation or false advertising at issue and, at a minimum, allege that he viewed the offending misrepresentation and/or advertisement. Plaintiff's Amended Complaint fails to sufficiently allege either of these essential elements.

First, Plaintiff has not identified **any** alleged statement or advertisement on Trulia's website that is "materially misleading." *See Daniel*, 287 F. Supp. 3d at 186. Instead, without stating anything more, Plaintiff's GBL § 349 and § 350 claims generally refer to Trulia's "consumer-oriented acts and practices" which are allegedly "false, deceptive and misleading in a material way." (Am. Compl., ¶ 86). This general and conclusory statement need not be accepted as true and cannot serve as a basis for Plaintiff's GBL § 349 and § 350 claims.

Second, Plaintiff fails to allege that he ever viewed the unspecified "misleading" statements or information on Trulia's website. Instead, Plaintiff again attempts to satisfy the requisite causation element with conclusory and generalized allegations not about what he himself views or has viewed but, instead, what **"prospective homebuyers"** see when they visit Trulia's website. (Am. Compl., ¶¶ 13-19, 38) (emphasis added). However, Plaintiff is not asserting his GBL § 349 and § 350 claims as a "prospective homebuyer." Rather, these claims arise from Plaintiff's status as a "licensed real estate salesperson and/or real estate broker" and his putative class is similarly brought on behalf of New York real estate salespersons and brokers. (Am. Compl., ¶¶ 57, 62).

In *Oden v. Boston Scientific Corp.*, the Court held that claims under GBL § 349 and § 350 require a causal connection between the misrepresentation made by the defendant and the

alleged injury suffered by the plaintiff.  *Oden*, 330 F. Supp. 3d at 902.  In order to satisfy this requirement, the Court found that a plaintiff must plausibly allege that "**he** has seen the misleading statements of which he complains before he came into possession of the products he purchased."  *Id*. (citations and internal quotation marks omitted) (emphasis added).  The Court held that the Plaintiff failed to adequately plead causation because he simply identified "certain statements contained on Defendant's website and in its product brochure[.]"  *Id*.  The Court found that "these allegations neither explicitly state[d] nor permit[ted] the plausible inference that Plaintiff actually saw these statements prior to making the determination . . . to purchase the [subject product]."  *Id*.  Ultimately, the Court dismissed the complaint because the Plaintiff failed to allege that he ever saw the statements at issue and "to the extent he did, where, when and how Plaintiff came to view either the website or the product brochure."  *Id*.[4]

The same result should follow here.  Plaintiff fails to allege that he ever saw the unidentified "misleading" information on Trulia's website, or explain how this "misleading" information caused his injury as a "licensed real estate salesperson and/or real estate broker."  Based on the foregoing, Plaintiff's GBL § 349 and § 350 claims fail as a matter of law and must be dismissed.

---

[4] *See also Whalen v. Pfizer, Inc*., 9 Misc. 3d 1124(A), 2005 WL 2875291 (N.Y. Sup. Ct. New York Cty. Sept. 22, 2005) ("[T]o assert a GBL § 349 claim, a plaintiff must allege that s/he was exposed to the alleged misrepresentations."); *Gale v. Int'l Bus. Machines Corp*., 9 A.D.3d 446, 447 (2nd Dep't 2004) (dismissing plaintiff's GBL § 349 claim where he fails to allege that he saw any of these statements before he purchased or came into possession of the product); *Solomon v. Bell Atl. Corp*., 9 A.D.3d 49, 52 (1st Dep't 2004) (holding that "[i]n a class action alleging deceptive acts and practices and false advertising, the proof must show that each plaintiff was reasonably deceived by the defendant's misrepresentations or omissions and was injured by reason thereof.").

ii.     **Plaintiff's Claims Do Not Involve "Consumer-Oriented" Conduct**

Plaintiff's GBL § 349 and § 350 claims likewise fail as a matter of law because Plaintiff is not asserting these claims as a "consumer" in a "consumer-oriented" situation.

This Court has observed that "[t]he paradigm § 349 case involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods[,] usually by way of false and misleading advertising." *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 301 (E.D.N.Y. 2010). Courts have warned that "[GBL] § 349 is not a sword to be wielded in business-versus-business disputes . . . where the party asserting the claim is not acting in a consumer role." *Id*. (citation and internal quotation marks omitted). While a business may bring GBL § 349 and § 350 claims, it may only do so where it was acting in a "consumer role" and injured in a way affecting the consuming public.

In this case, Plaintiff's GBL § 349 and § 350 claims fail because Plaintiff has not, and cannot, allege that he was acting in a "consumer role" when he was supposedly injured by Trulia's conduct alleged in the Amended Complaint. As described above, Plaintiff's claims are premised solely on his alleged activities as a "real estate salesperson and/or real estate broker" and the harm he allegedly suffered through "lost . . . valuable leads." (Am. Compl., ¶¶ 46, 57). These conclusory allegations of "loss" are not the type of harm that would affect a "consumer" in a "consumer-oriented" situation. *See Spirit Locker*, 696 F. Supp. 2d at 301. Thus, Plaintiff's GBL § 349 and § 350 claims must be dismissed as a matter of law.

iii.    **Plaintiff's Claims Cannot be Saved with General Allegations of Indirect Harm to Potential Homebuyers**

A claim of injury under GBL § 349 or § 350 typically requires the plaintiff to demonstrate that he or she purchased a product and did not receive the full value of their purchase. A plaintiff is not permitted to assert a claim based on derivative injuries or injuries to

13

others.  Here, Plaintiff attempts to buttress his claims of "lost leads," which do not arise in a "consumer-oriented" situation, and are not recoverable, with vague and unsupported claims of damage to "potential homebuyers" and the public at-large.  These speculative allegations of indirect harm fail to support Plaintiff's GBL § 349 and § 350 claims.

It is well-accepted that derivative actions, or those brought on behalf of another individual or group of individuals, are not permitted under either GBL § 349 or § 350.  *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 207 (N.Y. 2004); *see also Smokes-Spirits.Com*, 12 N.Y.3d at 623 (holding that since *Blue Cross* was decided, "allegations of indirect or derivative injuries will not suffice" under GBL § 349(h)).  Injuries are "indirect or derivative when the loss arises solely as a result of injuries sustained by another party."  *Blue Cross*, 3 N.Y.3d at 207.

Notwithstanding the prohibition against recovering for indirect or derivative injuries, Plaintiff's Amended Complaint includes line after line of conclusory allegations of harm to "potential homebuyers" and the general public.  (Am. Compl., ¶¶ 10, 22-42).  These unsupported and speculative allegations of harm to the "home buying" public are based solely on alleged indirect injuries, not those allegedly sustained by Plaintiff.  Thus, Plaintiff's allegations of harm to "prospective homebuyers" are entirely irrelevant and cannot save his GBL § 349 and § 350 claims from dismissal.

### C.   Plaintiff Fails to Allege the Necessary Elements of a Donnelly Act Claim

The Donnelly Act "is aimed at agreements for monopoly or in restraint of trade between different manufacturers or merchants engaged in a particular business."  *Light Corrugated Box Corp. v. S. Kraft Corp.*, 20 N.Y.S.2d 66, 67 (N.Y. Sup. Ct. New York Cty. 1940).  To establish a *prima facie* case under the Donnelly Act, the plaintiff is required to: "(1) identify the relevant

product market, (2) describe the nature and effects of the purported conspiracy, (3) allege how

the economic impact of that conspiracy is to restrain trade in the market in question, and (4)

show a conspiracy or reciprocal relationship between two or more entities." *Yankees Entm't &*

*Sports Network, LLC v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657, 678 (S.D.N.Y. 2002); *see*

*also Glob. Reinsurance Corp. U.S. Branch v. Equitas Ltd.*, 18 N.Y.3d 722, 731 (N.Y. 2012)

(noting that to bring a Donnelly Act claim, a plaintiff must allege concerted action).  To state a

viable Donnelly Act claim, a plaintiff must adequately define and describe the relevant product

market.  *Nat'l Gear & Piston, Inc. v. Cummins Power Sys.*, LLC, 861 F. Supp. 2d 344, 372

(S.D.N.Y. 2012) (*citing City of New York v. Group Health Inc.*, 649 F.3d 151, 155-56 (2d Cir.

2011)).  Further, "the alleged conspirators [must be] in competition with one another or with the

plaintiff" in order for a Donnelly Act violation to arise.  *Naples v. Stefanelli*, No. 12-CV-4460

(JS) (ARL), 2015 WL 541489, at *15 (E.D.N.Y. Feb. 7, 2015) (*quoting Benjamin of Forest Hills*

*Realty, Inc. v. Austin Sheppard Realty, Inc.*, 34 A.D.3d 91, 98 (2d Dep't 2006)).

A Donnelly Act claim must also include an allegation of "a reciprocal relationship of

commitment between two or more legal or economic entities. . . ."  *Saxe, Bacon & Bolan, P.C. v.*

*Martindale-Hubbell, Inc.*, 710 F.2d 87, 90 (2d Cir. 1983) (*quoting State v. Mobil Oil Corp.*, 38

N.Y.2d 460, 464 (N.Y. 1976)).  Further, the complaint "must include specific, factual allegations

as to the identities of the co-conspirators, the nature of their conspiracy, how the participants

attempted to accomplish their objectives, and what overt acts they performed."  *Nat'l Gear &*

*Piston*, 861 F. Supp. 2d at 371.  Therefore, "[u]nspecified contracts with unnamed other entities

to achieve unidentified anticompetitive effects [do] not meet the minimum [pleading standard]."

*Id.*  Courts have repeatedly held that conclusory allegations regarding the existence of a

conspiracy or reciprocal relationship will not suffice to maintain a Donnelly Act claim.  *See, e.g.*,

*Rochester Drug Co-op., Inc. v. Biogen Idec U.S.*, 130 F. Supp. 3d 764, 773 (W.D.N.Y. 2015); *LoPresti v. Massachusetts Mut. Life Ins. Co.*, 30 A.D.3d 474, 475 (2d Dep't 2006).

Since Plaintiff fails to allege the most basic elements of a Donnelly Act claim, his claim must be dismissed as a matter of law.

### i. Plaintiff Fails to Sufficiently Allege that Trulia is in Competition with His Business

Plaintiff's Donnelly Act claim against Trulia is fundamentally flawed because Plaintiff has not alleged, and cannot allege, that he, or the alleged Premier Agents, are "in competition" with Trulia. This pleading deficiency is fatal to Plaintiff's Donnelly Act claim.

The Donnelly Act is aimed at preventing agreements which result in monopolies or restraints of trade in a particular business. *Light Corrugated Box*, 20 N.Y.S.2d at 67. A fundamental element of any such claim is that the alleged conspirators must be in competition with one another or with the plaintiff. *See Naples*, 2015 WL 541489, at *15; *see also Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687, 688 (1st Dep't 1994) (holding the same); *Neri's Land Improvement, LLC v. J.J. Cassone Bakery, Inc.*, 65 A.D.3d 1312, 1315 (2nd Dep't 2009) (affirming the dismissal of a Donnelly Act claim because the amended complaint failed to assert "that the alleged conspirators were in competition with one another or with [plaintiffs].").

Plaintiff's Amended Complaint alleges that Trulia is the operator of a "leading real estate website" that assists homeowners in the process of buying and selling homes by providing tools for identifying real estate agents, mortgage lenders, and other real estate related professionals. (See Am. Compl., ¶¶ 1, 13-18). In contrast, Plaintiff and the alleged "Premier Agents," who Trulia is alleged to have "conspired" with, are real estate salespersons and/or brokers. (Am. Compl., ¶¶ 57-59). Plaintiff's Amended Complaint acknowledges that Trulia receives advertising fees from "Premier Agents," while Plaintiff alleges that he, along with the "Premier

Agents," are seeking commissions associated with the sale and purchase of properties.  (See Am. Compl., ¶¶ 7, 30-33, 46).

This Court has previously held that the failure to sufficiently allege competition between the alleged co-conspirators is fatal to a Donnelly Act claim and serves as a basis for dismissal. *See Naples*, 2015 WL 541489, at *15 (dismissing the plaintiff's Donnelly Act claim for failure to sufficiently allege competition between the co-conspirators).  The same result should follow here, as Plaintiff has effectively pled himself out of Court by conceding that he and/or the Premier Agents are not in competition with Trulia.  As set forth above, Trulia operates a leading real estate website, while Plaintiff and the Premier Agents are real estate salespersons and/or brokers who attempt to secure commissions from "prospective homebuyers."  Thus, Plaintiff has not and cannot allege that Trulia competes with these real estate professionals.  Therefore, Plaintiff's Donnelly Act claim must be dismissed as a matter of law.

### ii.    Plaintiff Has Not and Cannot Plead a Reciprocal Relationship Designed to Achieve an Unlawful Objective between the Premier Agents and Trulia

Plaintiff's Donnelly Act claim also fails to state a valid claim for relief because Plaintiff has not, and cannot, sufficiently allege a reciprocal relationship that was designed to carry out an unlawful objective between the Premier Agents and Trulia.

To adequately plead a Donnelly Act claim, the complaint must include sufficient factual allegations of "a reciprocal relationship of commitment" between the co-conspirators as well as "specific, factual allegations" regarding their identities, how the co-conspirators carried out the objectives, and what overt acts they performed.  *See Saxe, Bacon & Bolan*, 710 F.2d at 90; *see also Nat'l Gear & Piston*, 861 F. Supp. 2d at 371.  "In particular, plaintiff must allege facts that name the alleged conspirators." *Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 997 F. Supp. 340, 352 (E.D.N.Y. 1998) (citations omitted).  Conclusory allegations of a conspiracy are

insufficient to sustain a Donnelly Act claim.  *See id.*; *see also Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*, 736 F. Supp. 2d 661, 668 (W.D.N.Y. 2010) (holding the same).  A plaintiff must plead sufficient facts showing "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Caithness Long Island II, LLC v. PSEG Long Island LLC*, 2019 WL 6043940, at *4 (E.D.N.Y. Sept. 30, 2019) (*quoting Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 184 (2d Cir. 2012)).

Plaintiff's Amended Complaint fails to sufficiently plead the requisite conspiracy or reciprocal relationship between Trulia and the Premier Agents.  As an initial matter, Plaintiff's Donnelly Act claim fails because it relies entirely on **unspecified** dealings with **unnamed** Premier Agents.  This is precisely the type of vague and conclusory allegations that courts have held do not meet the pleading requirements for a Donnelly Act claim.  In *Great Atl. & Pac. Tea*, the Court dismissed a Donnelly Act claim where, as here, the "plaintiff fail[ed] to identify the alleged co-conspirators except as the 'owners and operators of existing retail stores.'" *See Great Atl. & Pac. Tea*, 997 F. Supp. at 352.  On this basis alone, Plaintiff's Donnelly Act claim should be dismissed as a matter of law.

Even if Plaintiff could overcome this fatal flaw, his Amended Complaint also fails to sufficiently plead the existence of a "reciprocal relationship" that was intended to achieve an "unlawful objective" between Trulia and the Premier Agents.  Specifically, there are no allegations that suggest an actual agreement between Trulia and the Premier Agents.  Instead, Plaintiff simply pleads that Trulia receives fees in exchange for allowing Premier Agents to appear on Trulia's website and directs certain customer inquiries, submitted through Trulia's website, to Premier Agents.  (Am. Compl., ¶¶ 6-7).  These allegations suggest nothing more than a traditional advertising transaction where one party pays another to appear on a website,

billboard, or newspaper.  Even accepting Plaintiff's conclusory allegations as true, there is also nothing in the alleged relationship between Trulia and the Premier Agents that suggests an "unlawful objective" or purpose.

Plaintiff goes to great lengths to speculate about what the Premier Agents do with any contacts or referrals received through Trulia's website.  However, at no point does Plaintiff suggest that Trulia is aware of, participates in, or receives any benefit as a result of the Premier Agents' purported "steering" of potential homebuyers.  Simply put, Plaintiff's allegations fall woefully short of the requirement to plead a "reciprocal relationship" designed to achieve an "unlawful objective" between Trulia and the unnamed Premier Agents.

### iii.   Plaintiff's Amended Complaint Fails to Sufficiently Identify the Market at Issue or Allege Trulia's Actions have an Adverse Effect on Competition

Plaintiff's Donnelly Act claim must also be dismissed because Plaintiff fails to sufficiently identify the market at issue or allege an "antitrust injury" that results in an adverse effect on competition in the relevant market.

"For antitrust purposes, a relevant market consists of both a product market—those commodities or services that are reasonably interchangeable, and a geographic market—the area in which such reasonable interchangeability occurs."  *Benjamin of Forest Hills Realty*, 34 A.D.3d at 95 (citations omitted).  "If a complaint fails to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand, . . . a court may grant a Rule 12(b)(6) motion."  *Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y. 1993).  A plaintiff must also plead "he suffered an antitrust injury by alleg[ing] that the challenged action had an actual adverse effect on competition as a whole in the relevant market."  *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 398 (E.D.N.Y. 2013) (citation and internal quotation marks

omitted).   The antitrust injury requirement for Donnelly Act claims "ensures that a plaintiff recover only if the loss stems from a competition-*reducing* aspect or effect of the defendants' behavior." *Agency Dev., Inc. v. Med Am. Ins. Co.*, 310 F. Supp. 2d 538, 543 (W.D.N.Y. 2004) (*citing Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)); *see also Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 568 (S.D.N.Y. 2007) (holding the same); *Alternative Electrodes, LLC v. Empi, Inc.*, 597 F. Supp. 2d 322, 328 (E.D.N.Y. 2009) (noting that "it is insufficient that plaintiff suffered from defendants' allegedly wrongful behavior; competition itself must be threatened as well."). Plaintiff's Amended Complaint fails to include the necessary allegations to meet these basic pleading requirements.

As an initial matter, Plaintiff's definition of the New York "real estate broker services" market is entirely insufficient and fundamentally flawed.   Other than simply describing the market as the New York "real estate broker services" market, Plaintiff's Complaint is devoid of any allegations describing the market, the competition or "comparable services" among real estate agents, or the reasonableness of the geographic limitation.   (Am. Compl., ¶ 76).   This pleading failure alone is fatal to Plaintiff's Donnelly Act claim.

Further, the Amended Complaint is devoid of any factual allegations whatsoever that could support a claim that the New York "real estate broker services" market as a whole was harmed by Trulia's purported conduct.  Adverse effects are determined by examining allegations of "reduced output, increased prices, and decreased quality." *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 264 (2d Cir. 2001).  Plaintiff's Amended Complaint offers no factual contentions, and instead offers nothing more than formulaic labels and conclusory allegations, to describe the alleged harm to the market.  For example, Plaintiff's Amended Complaint simply states that "Defendant's business practice causes consumer confusion and

frustration, and immediately harms listing agents who are not adequately disclosed in connection with the potential sale of a property." (Am. Compl., ¶ 77). Even assuming this was a description of lost commissions on potential real estate sales, which one would have to infer from the pleading, courts have rejected allegations such as these of lost brokerage commissions as being sufficient to establish an injury to competition to the relevant product market as a whole. *See Benjamin of Forest Hills Realty*, 34 A.D.3d at 97; *see also Wolf Concept S.A.R.L.*, 736 F. Supp. 2d at 670 (holding that plaintiff "failed to allege the conduct complained of had an adverse effect on competition in the relevant product market as a whole" and noting that instead, Plaintiff seemed focused only on recovering personal losses in the form of "lost profits, business opportunities, etc."). Plaintiff simply has not and cannot plausibly allege that competition in the New York "real estate broker services" market as a whole has been harmed, and this failure is fatal to his claims. *See Naples*, 972 F. Supp. 2d at 398. As such, Plaintiff's Donnelly Act claim must be dismissed as a matter of law.

### D. Plaintiff's Unfair Competition Claim Fails to State a Valid Claim for Relief

Like many of Plaintiff's claims, his unfair competition claim fails because he has not alleged, and cannot allege, the basic elements of such claim. In New York, "[a]n unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property **to compete** against the plaintiff's own use of the same property[.]" *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (emphasis added). To maintain an unfair competition claim, plaintiff must prove "that the defendant: (1) misappropriated the plaintiff's labors, skills, expenditures, or good will; and (2) displayed some element of bad faith in doing so." *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 446 (E.D.N.Y. 2011) (*quoting Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38

A.D.3d 690, 692 (2d Dep't 2007)).  In order to act in bad faith, the defendant "must exploit some commercial advantage which belonged exclusively to [another]."  *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 329 (E.D.N.Y. 2014) (citation and internal quotation marks omitted); *see also Roy Exp. Co.*, 672 F.2d at 1105 (holding the same); *LoPresti*, 30 A.D.3d at 476 (affirming the dismissal of plaintiff's unfair competition claim "because the complaint failed to allege the bad faith misappropriation of a commercial advantage which belonged exclusively to him").  Courts have specified that unfair competition is not synonymous with the vague phrase "commercial unfairness."  *Carson Optical*, 11 F. Supp. 3d at 329.

The Amended Complaint utterly fails to allege that Trulia "competes" with Plaintiff or misappropriated "Plaintiff's property" or a "commercial advantage" belonging exclusively to Plaintiff.  As described above, Plaintiff's Amended Complaint effectively admits that Trulia, as the operator of one of the "leading real estate website[s]," does not, and could not, compete with Plaintiff, a "real estate salesperson and/or real estate broker."  (Am. Compl., ¶¶ 1, 57).  Further, Plaintiff has not alleged, and cannot allege, that "lost . . . valuable leads" purportedly generated from a listing on Trulia's website were "his property" or belonged "exclusively" to him as the listing agent.  (Am. Compl., ¶ 46).  While Plaintiff claims that "[t]he listing agent has the original connection with the seller and contracts to sell the house," it does not follow that **all prospective homebuyers** for a particular listing belong to him.[5]  (Am. Compl., ¶ 11).  As such, Plaintiff fails to sufficiently allege that Trulia has misappropriated any property or commercial advantages belonging "exclusively" to him and, therefore, his unfair competition claim must be dismissed as a matter of law.

---

[5] In fact, Plaintiff's unsupported suggestion that listing agents are entitled to all leads associated with prospective homebuyers is by its very nature "anti-competitive" to anyone but the listing agents themselves.

### E.      Plaintiff's Unjust Enrichment Claim Must Be Dismissed

Plaintiff's unjust enrichment claim also must be dismissed as a matter of law because Plaintiff has not alleged, and cannot allege, that Trulia received any money or benefits at his expense.  In addition, Plaintiff's unjust enrichment claim is duplicative of his other claims and, therefore, must also be dismissed for this separate reason.

### i.      Plaintiff Fails to Allege that Trulia Received Money or Benefits At His Expense

In New York, to prevail on an unjust enrichment claim, the plaintiff must prove: "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff."  *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001) (citations omitted).  As this Court has noted, the "essence" of an unjust enrichment claim "is that one party has parted with money or a benefit that has been received by another at the expense of the first party."  *Barouh Eaton Allen Corp. v. Cillco, Inc.*, No. 06-CV-1820 (DLI) (KAM), 2008 WL 465493, at *7 (E.D.N.Y. Feb. 15, 2008) (J., Irizarry) (*citing Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).  Therefore, "[a] complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belongs to the plaintiff."  *Id.* (citations and internal quotation marks omitted).

In this case, Plaintiff wholly fails to allege that Trulia ever received any money or any other benefits whatsoever belonging to him.  Although Plaintiff alleges that Trulia received "substantial monetary benefits . . . as a result of [its] misconduct," he has not alleged, and cannot allege, that this money **belonged to him**.  In fact, other than identifying "fees" that Trulia received from Premier Agents, Plaintiff fails to even identify what these "substantial monetary benefits" are comprised of.

Further, Plaintiff cannot rely on his contention that Premier Agents received the purported "valuable leads" to his detriment.  As described above, there is simply nothing to suggest that these "valuable leads" belonged to Plaintiff or that the Premier Agents are affiliated with Trulia.  As such, these conclusory allegations cannot salvage Plaintiff's unjust enrichment claim from dismissal.

### ii.    Plaintiff's Unjust Enrichment Claim is Duplicative

Even if Plaintiff had alleged sufficient facts to state a claim for unjust enrichment, which he has not, the claim should be dismissed as duplicative of his GBL § 349 and § 350 claims.  It is well-established that an unjust enrichment claim cannot survive "where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012) (citations omitted).  In fact, courts have specifically applied this principle to dismiss unjust enrichment claims which, as here, are duplicative of GBL § 349 and § 350 claims.  *See, e.g.*, *Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 298 (S.D.N.Y. 2015); *Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017).

Here, Plaintiff's unjust enrichment claim is plainly duplicative of his GBL § 349 and § 350 claims because it simply recites the elements for an unjust enrichment claim by relying on "the conduct described in this Complaint and other inequitable conduct."  (Am. Compl., ¶ 101). Simply put, Plaintiff's unjust enrichment claim is asserted as a mere catchall for his meritless GBL § 349 and § 350 claims and, consequently, should be dismissed as a matter of law.

### F.    Plaintiff's Injunctive Relief Claim Should Be Dismissed

Plaintiff's Amended Complaint seeks injunctive relief "directing [Trulia] to correct the challenged practices to comply with the law" and "remove, correct and/or refrain from the

challenged practices[.]" (Am. Compl., at 14). However, because Plaintiff's injunctive relief claim is impossibly vague, it must be dismissed as a matter of law.

It is well-established that "obey the law" injunctions are vague and unenforceable. *See S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001); *see also Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008). Courts have granted motions to strike injunctive relief claims seeking "obey the law" injunctions. *See, e.g.*, *Matthews v. Mem'l Sloan-Kettering Cancer Ctr.*, No. 83 CIV. 6065 (SWK), 1985 WL 151, at *4 (S.D.N.Y. Mar. 19, 1985) (granting defendant's motion to strike the section of plaintiff's prayer for relief that sought an injunction requiring defendant to comply with the law).

Here, Plaintiff's Amended Complaint seeks an injunction directing Trulia "to correct the challenged practices to comply with the law" and "remove, correct and/or refrain from the challenged practices[.]" (Am. Compl., at 14). This is precisely the type of impermissibly vague and unenforceable injunction that has been stricken by other courts. As such, Plaintiff's claim for injunctive relief should be dismissed as a matter of law.

## CONCLUSION

For the reasons set forth above, Trulia respectfully requests that Plaintiff's Amended Complaint be dismissed in its entirety with prejudice.

Dated:  April 10, 2020

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Francis X. Riley*
    Francis X. Riley III, Esq.
    Ryan L. DiClemente, Esq.
    650 College Road East, Suite 4000
    Princeton, New Jersey 08540
    (609) 452-3100
    *Attorneys for Defendant Trulia, LLC*