UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ANDREW KIM, individually and on behalf of all  :
others similarly situated,                     :
                                               :
                            Plaintiff,         :
                                               :      **MEMORANDUM & ORDER**
            -against-                          :      19-CV-06733 (DLI) (RER)
                                               :
TRULIA, LLC,                                   :
                                               :
                            Defendant.         :
-------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Andrew Kim ("Plaintiff") brings this putative class action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), against Trulia, LLC ("Defendant"), alleging violations of New York's General Business Law ("GBL") Sections 349 and 350 and claims for unfair competition and unjust enrichment. *See generally*, Amended Complaint ("Am. Compl."), Dkt. Entry No. 11.[1] Defendant moved to dismiss for lack of standing and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See*, Def.'s Mot., Dkt. Entry No. 14-1. Plaintiff opposed the motions. *See*, Plf.'s Opp'n. Defendant replied. *See*, Def.'s Rep., Dkt. Entry No. 16. For the reasons set forth below, this action is dismissed based on the Court's independent finding that it lacks subject matter jurisdiction under CAFA. Accordingly, the Court declines to rule on Defendant's motions which the Court finds to be moot.

## BACKGROUND

Plaintiff is a licensed real estate salesperson and broker in New York. Am. Compl. ¶ 57. Defendant operates Trulia.com, one of the nation's leading real estate websites. *Id.* ¶ 1. On its

---

[1] Plaintiff withdrew his GBL Section 340 claim. *See*, Plf.'s Opp'n, Dkt. Entry No. 15 at 8.

1

website, Defendant purports to simplify the process of buying and selling a home. *Id.* Defendant lists properties that are available for sale in New York and connects prospective homebuyers with the real estate agents for each property. *Id.* ¶¶ 13-17. Each property listing on Defendant's website has both a "Listing Agent" and three "Premier Agents." *Id.* ¶¶ 14-15.

The listing agent contracts to sell the property on the homeowner's behalf and exerts considerable time, money and resources to obtain the exclusive listing from the seller. *Id.* ¶ 11. The listing agent supplies the listing to Defendant for inclusion on its website. *Id.* ¶ 19. The premier agents, on the other hand, have no connection to the listed properties. *Id.* ¶ 6. Rather, they pay Defendant referral fees for leads on prospective homebuyers. *Id.* ¶¶ 6-7. In exchange, Defendant advertises the premier agents as the real estate agents for the listed properties even though they have no knowledge of the properties. *Id.* ¶¶ 6-7, 19. Thus, Defendant enables the premier agents to solicit homebuyers in the listings supplied by the listing agents. *Id.* ¶ 19.

When a prospective homebuyer searches and finds a property of interest on Defendant's website, he must enter his contact information to request additional information about the property. *Id.* ¶¶ 13-14. Upon receipt, Defendant transmits the homebuyer's contact information to the three premier agents for the listed property. *Id.* ¶ 14. If the homebuyer attempts to contact the listing agent for the property by phone, text message or email, Defendant screens that communication and connects the homebuyer with one of the three premier agents instead. *Id.* ¶¶ 16-17. The premier agent cannot assist the homebuyer with the listed property and steers him towards a different property. *Id.* ¶¶ 23, 28. Plaintiff claims the premier agent then attempts to induce the homebuyer into an unfair "Buyer's Agent" or "Dual Agency" agreement for the separate property whereby the premier agent can collect a commission from both the homebuyer and the seller. *Id.* ¶¶ 30, 32.

Plaintiff alleges that Defendant's practices are unfair to listing agents and deceptive and harmful to consumers. *Id.* ¶ 9. Defendant deprives prospective homebuyers from having access to the listing agents, and Defendant has caused Plaintiff to lose "valuable leads" that "would have" turned into earned commissions. *Id.* ¶¶ 22, 46. Plaintiff alleges violations of New York's General Business Law ("GBL") Sections 349 and 350, as well as claims for unfair competition and unjust enrichment. *Id.* ¶¶ 81-105. Defendant moved to dismiss for lack of standing and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See*, Def.'s Mot. Plaintiff opposed the motions. *See*, Plf.'s Opp'n. Defendant replied. *See*, Def.'s Rep.

## **LEGAL STANDARD**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). The Court accepts as true all factual allegations in the Amended Complaint but does not draw inferences favorable to the party asserting jurisdiction. *See*, *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).

Under CAFA, the Court possesses original federal jurisdiction "over any class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6)). The party asserting subject matter jurisdiction under CAFA "bears the burden of establishing that the case is properly in federal court[.]" *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp.2d 448, 450-51 (S.D.N.Y. 2009)

3

(citing *DiTolla v. Doral Dental IPA of N.Y., LLC*, 469 F.3d 271, 275 (2d Cir. 2006)).

## DISCUSSION

Plaintiff has invoked the Court's subject matter jurisdiction pursuant to CAFA. Am. Compl. ¶ 49. Although Defendant did not raise this question, the Court first must determine independently if it possesses subject matter jurisdiction under CAFA. *See*, *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.") (citation omitted); *See also*, *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018). "[I]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 n.2 (2d Cir. 2020) (quoting Fed. R. Civ. P. 12(h)(3)).

### I.     The Class Action Fairness Act

#### A.     Class Size

Plaintiff states that the class will consist of "all real estate brokers, real estate sales agents and other similarly designated real estate personnel in New York." Am. Compl. ¶ 62. While Plaintiff did not quantify or estimate the class size, the Court is satisfied that the class will involve 100 or more members.

#### B.     Minimal Diversity

The Court finds that there is minimal diversity between the parties. Plaintiff is a citizen of New York. *Id.* ¶ 52. Defendant is a Delaware limited liability company with a principal place of business in California. *Id.* ¶ 53.

Under CAFA, "an unincorporated association [is] deemed to be a citizen of the State where

4

it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). The Second Circuit has not provided guidance as to a limited liability company's citizenship for purposes of CAFA jurisdiction. *See*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) ("The term 'unincorporated association' is not defined in CAFA, and this Court has not addressed the question of whether it encompasses limited liability companies."). Two Circuit Courts have held that an LLC's citizenship in a CAFA action is determined by its state of organization and principal place of business. *See*, *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237 n.1 (10th Cir. 2015); *Ferrell v. Express Check Advance of S.C. LLC*, 591 F.3d 698, 702-04 (4th Cir. 2010).

The Court adopts the reasoning of the Tenth and Fourth Circuits and finds that Defendant is an unincorporated association under 28 U.S.C. § 1332(d)(10). *See*, *Claridge v. N. Am. Power & Gas Co., LLC*, 2015 WL 5155934, at *1-2 (S.D.N.Y. Sept. 2, 2015) ("This Court concludes that as an LLC, [defendant] is an unincorporated association, and its citizenship in a CAFA action is determined pursuant to section 1332(d)(10)."). Accordingly, Defendant is a citizen of Delaware and California, and there is minimal diversity between the parties.

### C. <u>Amount in Controversy</u>

Plaintiff has failed to demonstrate that CAFA's damages threshold is satisfied. Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the [amount] in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. 1332(d)(6). A plaintiff must prove to a "reasonable probability" that the amount in controversy exceeds the statutory threshold. *See*, *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (citing *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)).

The Second Circuit has recognized a rebuttable presumption that the face of the complaint is a good faith representation of the amount in controversy. *See*, *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (citation omitted). However, "the jurisdictional amount [] ought not to receive the presumption of truth unless it is supported by facts rendering it plausible." *Weir v. Cenlar FSB*, 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (citations omitted). "A defendant may rebut th[e] presumption by demonstrating to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy [the] jurisdictional minimum[]." *Pyskaty*, 856 F.3d at 223 (internal quotation marks and citation omitted); *See also*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

Plaintiff alleges that, "[u]pon information and belief, the aggregate amount in controversy is more than $5,000,000, exclusive of interests and costs." Am. Compl. ¶ 51. Initially, Plaintiff does not provide a basis for this belief and merely recites CAFA's statutory damages threshold. *See*, *Sutta v. Hyundai Motor Am.*, 2013 WL 12155722 (C.D. CA. Jan. 16, 2013) (dismissing CAFA action for lack of subject matter jurisdiction when plaintiff pled "upon information and belief" that the jurisdictional threshold was satisfied); *Starke v. United Parcel Service, Inc.*, 2011 WL 13294965, at *2 (E.D.N.Y. Jan. 13, 2011) (" . . . rote invocations to a jurisdictional statute's amount-in-controversy requirement do not, by themselves, constitute a specification of damages sufficient to invoke federal subject matter jurisdiction.") (citation omitted). Thus, Plaintiff's conclusory damages allegation fails to demonstrate that the amount in controversy is satisfied.

Plaintiff explains that "[a]s a result of defendant's conduct, plaintiff has lost and continues to lose valuable [prospective homebuyer] leads which would have turned into earned

6

commissions[.]" Am. Compl. ¶ 46. While Plaintiff characterizes this as a "monetary loss[,]" Plaintiff does not specify or estimate the number of leads he has lost, the value of a lost lead, or the value of a lost commission on a prospective sale. *Id.* Without these facts, the Court can only speculate about Plaintiff's monetary losses. Therefore, Plaintiff's allegations of lost leads and lost commissions also are insufficient to prove damages. *See*, *DiTolla*, 469 F.3d at 277 ("We cannot say beyond mere speculation . . . whether [] damages, if they are awarded, would be more than $5 million. [Defendant] has thus failed to demonstrate that the claim here satisfies CAFA's jurisdictional amount in controversy.").

Plaintiff claims a right to statutory damages under New York's GBL for Defendant's alleged violations of Sections 349 and 350. Am. Compl. ¶¶ 94-95. Section 349(h) states that Plaintiff's damages shall be equal to "his actual damages or fifty dollars, whichever is greater[.]" GBL § 349(h). The Court "may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars," if a defendant violates the section willfully or knowingly. *Id.* Section 350-e(3) provides that Plaintiff's damages shall be equal to his "actual damages or five hundred dollars, whichever is greater[.]" GBL § 350-e(3). The Court "may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars," if a defendant violates the section willfully or knowingly. *Id.* Plaintiff did not plead a specific amount of actual damages.

Assuming *arguendo* that Defendant knowingly or willfully violated Sections 349 and 350 and Plaintiff is entitled to a maximum statutory damages award of $11,000, Plaintiff still has not shown that the jurisdictional threshold is satisfied. Plaintiff failed to plead any facts about the size of the class in this case. Am. Compl. ¶ 62. In other CAFA cases the plaintiffs, at the minimum, quantified the class size in some way that allowed the courts to calculate possible damages. For

example, in *Cohen v. Casper Sleep, Inc.*, the plaintiff asserted that the defendant violated GBL Sections 349 and 350.  2018 WL 3392877, at *6 (S.D.N.Y. July 12, 2018).  The Court explained that there would need to be 100,000 class members who could sue under Section 349, each asserting the minimum statutory damages of $50, for the amount in controversy to be satisfied.  *Id.* at 7.  Given the plaintiff's assertion that there were "millions" in the class, the Court found that "there [was] a reasonable probability that the amount in controversy exceed[ed] $5 million."  *Id.*

Similarly, in *Andersen v. Walmart Stores, Inc., et al.*, the plaintiff alleged that the defendants violated GBL Sections 349 and 350.  2017 WL 661188, at *1 (W.D.N.Y. Feb. 17, 2017).  The Court assumed the maximum statutory damages available under Sections 349 and 350 of $1000 and $10,000, respectively.  *Id.* at 6.  Given the plaintiff's estimate that the class size was "in excess of 10,000 members[,]" the Court found that there was a "reasonable probability" that CAFA's damages threshold was satisfied.  *Id.* at 2, 6.  By failing to plead any facts either quantifying or estimating the class size, Plaintiff has not shown to a reasonable probability that aggregate damages under GBL Sections 349 and 350 exceed CAFA's damages threshold.

Plaintiff additionally requests injunctive relief, attorney's fees, punitive damages and treble damages "pursuant to [his] common law and other statutory claims."  Am. Compl. at 14.  "In actions seeking [] injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).  The prevailing calculation method is the "plaintiff's viewpoint" approach, where the Court calculates the value to the plaintiff not the cost to the defendant.  *Parker v. Riggio*, 2012 WL 3240837, at *7 (S.D.N.Y. Aug. 6, 2012) (internal quotation marks and citation omitted).  Plaintiff did not quantify or estimate the value of the injunctive relief that he seeks.  Therefore, the

Court declines to consider injunctive relief in calculating the amount in controversy. *See*, *Acevado v. Citibank, N.A.*, 2019 WL 1437575, at *12-13 (S.D.N.Y. Mar. 31, 2019).

"Attorneys' fees may be used to satisfy the amount in controversy only if they are recoverable as a matter of right pursuant to statute or contract." *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 85-86 (2d Cir. 2012) (citing *Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972)). When a court has discretion to award attorney's fees under a state statute, attorney's fees cannot be included in the jurisdictional amount. *See*, *Cohen v. KIND L.L.C.*, 207 F. Supp.3d 269, 272 (S.D.N.Y. 2016) (citing cases). Plaintiff did not request a specific amount for attorney's fees or claim that he is entitled to attorney's fees pursuant to a contract with Defendant. Under GBL Sections 349 and 350, an award of attorney's fees also falls within the Court's discretion. *See*, *Porsch v. LLR Inc.*, 2019 WL 3532114, at *3 (S.D.N.Y. Aug. 2, 2019); *Andersen*, 2017 WL 661188, at *6. Accordingly, the Court declines to consider attorney's fees. *Id.*

The Court may consider punitive damages when calculating the amount in controversy, if they are permitted under the controlling law. *See*, *Bindrum v. Am. Home Assur. Co., Inc.*, 441 F. App'x 780, 782 (2d Cir. 2011) (citing *A.F.A. Tours, Inc., v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991)). However, even if punitive damages were permitted in this case, Plaintiff did not demand a specific amount of punitive damages in his Amended Complaint. As such, the Court declines to speculate about this number to calculate the amount in controversy. *See*, *Shulman v. Chaitman LLP*, 392 F. Supp.3d 340, 357 n.7 (S.D.N.Y. 2019) (" . . . plaintiffs have not provided any amounts to be considered when assessing punitive damages. Thus, [] using punitive damages to calculate the amount in controversy would require the Court to engage in unguided speculation, which it cannot do.") (internal quotation marks, alterations and citation omitted).

Finally, Plaintiff has not shown that trebling damages under his common law and statutory claims would satisfy the jurisdictional threshold. As mentioned, Plaintiff did not request a specific amount of compensatory damages or plead any facts about the class size. Therefore, the Court cannot determine Plaintiff's compensatory damages, what those damages would be if trebled, or if his damages, when multiplied by the class size, would exceed CAFA's jurisdictional threshold. *See*, *Ruggeri v. Boehringer Ingelheim Corp.*, 2008 WL 11483556, at *2 (D. Conn. Feb. 27, 2008) (district court lacked subject matter jurisdiction under CAFA when plaintiffs failed to plead specific amount of damages or "any facts" that would allow the court to calculate damages).

For all these reasons, Plaintiff has failed to show to a reasonable probability that CAFA's damages threshold is satisfied. Accordingly, the Court lacks subject matter jurisdiction.

## **CONCLUSION**

For the reasons set forth above, this action is dismissed for lack of subject matter jurisdiction. Accordingly, the Court declines to rule on Defendant's motions to dismiss, which the Court finds to be moot.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2021

/s/
DORA L. IRIZARRY
United States District Judge